**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| DCH HEALTHCARE AUTHORITY, THE HEALTHCARE AUTHORITY FOR BAPTIST HEALTH, AN AFFILIATE OF UAB HEALTH SYSTEM, MEDICAL WEST HOSPITAL AUTHORITY, AN AFFILIATE OF UAB HEALTH SYSTEM, EVERGREEN MEDICAL CENTER, LLC, GILLIARD HEALTH SERVICES, INC., CRESTWOOD HEALTHCARE, L.P., TRIAD OF ALABAMA, LLC, QHG OF ENTERPRISE, INC., AFFINITY HOSPITAL, LLC, GADSEN REGIONAL MEDICAL CENTER, LLC, FOLEY HOSPITAL CORPORATION, THE HEALTHCARE AUTHORITY OF CLARKE COUNTY, ALABAMA, BBH PBMC, LLC, BBH, WBMC, LLC, BBH SBMC, LLC, BBH CBMC, LLC, BBH BMC, LLC, | C.A. No. 19-CV-756<br><br>(Removal from: The Circuit Court of Conecuh County, Alabama) |
| Plaintiffs, | |
| vs. | |
| PURDUE PHARMA L.P.; PURDUE PHARMA INC.; THE PURDUE FREDERICK COMPANY, INC.; et. al., | |
| Defendants. | |

**NOTICE OF REMOVAL**

In accordance with 28 U.S.C. §§ 1331, 1332, 1441, 1446, 1453, and 1367 with full reservations of defenses, including its objection to personal jurisdiction, Defendants The Kroger Co. and Kroger Limited Partnership II ("Kroger"), give notice of the removal of this action originally filed in the Court of Conecuh County, Alabama, to the United States District Court for the Southern District of Alabama.

In support of removal, Kroger provides this "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee Basis Operating Co., LLC* v.

*Owens*, 135 S. Ct. 547, 553 (2014) ("By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure.").

## I.        NATURE OF THE REMOVED ACTION.

1.       On September 3, 2019, Plaintiffs DCH Healthcare Authority, et. al., ("Plaintiffs") filed a complaint in the Circuit Court of Conecuh County, Alabama, for claims relating to prescription opioid medications.

2.       Plaintiffs allege claims against three defendant groups ("Defendants"): Marketing Defendants, Distributor Defendants, and National Retail Pharmacies. Plaintiffs note that Defendants Kroger, CVS, Walgreens, Rite Aid, and Walmart Inc.[1] and Wal-Mart Stores East, LP ("Walmart") shall be referred to as "Supply Chain Defendants."

3.       Plaintiffs bring claims related to prescription opioid medications, including claims for (1) negligence; (2) public nuisance; (3) unjust enrichment; (4) fraud and deceit; 5) wantonness; (6) civil conspiracy. Plaintiffs seeks damages and equitable relief for alleged injuries to the individuals of their communities in Alabama.

4.       This action is one of approximately 2,000 opioid lawsuits filed by government entities against manufacturers, distributors, and retailers of prescription opioid medications. Plaintiffs allege that Defendants are liable for the economic and non-economic injuries suffered by Plaintiffs and its residents, including physicians treating residents and employees, and opioid-addicted individuals.

5.       On December 5, 2017, the Judicial Panel on Multidistrict Litigation ("JPML") formed a multidistrict litigation ("MDL") and transferred opioid-related actions to Judge Dan

---

[1] Plaintiff named Wal-Mart Inc. as a defendant to this action; as of February 1, 2018 Wal-Mart, Stores, Inc. became known as Walmart Inc.

Polster in the Northern District of Ohio pursuant to 28 U.S.C. § 1407. *See In re Nat'l Prescription Opiate Litig.*, MDL No. 2804 (Dec. 5, 2017), ECF No. 328.  More than 2,000 opioid-related actions are pending in the MDL, including hundreds of actions originally filed within the Sixth Circuit.

6.    Plaintiffs' 310-page Complaint resembles virtually all of the complaints filed in the Opiate MDL. The bulk of the allegations in these complaints have been levied by counties against the manufacturers for alleged deceptive marketing of prescription opioids from approximately the 1990s to present.  In fact, the allegations against the manufacturers and distributors here are nearly identical to those asserted in *The County of Summit, Ohio, et. al.* v. *Purdue Pharma L.P., et al.*, MDL No. 17-md-2804, Case No. 1:18-op-45090, a bellwether case currently being litigated in the Opiate MDL.

7.    The gravamen of Plaintiffs' Complaint is that Defendants "have manufactured, promoted, marketed, and distributed opioids for the management of chronic pain by misleading consumers and medical providers, such as hospitals, through misrepresentations or omissions regarding the appropriate uses, risks, and safety of opioids."  Complaint ¶ 214.

8.    Plaintiffs also allege that certain Defendants "failed to report suspicious orders, prevent diversion, or otherwise control the supply of opioids flowing into communities across America."  Complaint ¶ 662.

9.    According to Plaintiffs, Distributor Defendants "owe[d] a duty under, inter alia, Alabama common law and statutory law, and federal law, to monitor, detect, investigate, refuse to fill, and report suspicious orders of prescription opioids as well as those orders which the Distributor Defendants knew or should have known were likely to be diverted."  Complaint ¶ 701.

10.    Further, Plaintiffs state how the "National Retail Pharmacies" are "responsible for preventing diversion of prescription opioids into the illegal market by, among other things,

monitoring and reporting suspicious activity," per the "extensive guidance to pharmacies concerning their duties to the public" published by the "DEA, among others."  Complaint ¶¶ 813-815.

11.    Based on these allegations, Plaintiffs claim a litany of injuries to the members of their community stemming from the alleged abuse of addictive opioids in Conecuh County and in the state of Alabama. These include alleged damages in the form of expenses expended for medical insurance claims for opioids that were not medically necessary, as well as increased costs of social services, emergency services, health systems, law enforcement, and treatment facilities. *E.g.,* Complaint ¶¶ 34, 61, 880.

## II.    BASIS OF REMOVAL

### 1.  FEDERAL QUESTION

12.    Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1331 because Plaintiffs' claims present a substantial federal question under the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801, et seq.

13.    The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

14.    "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc.* v. *Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002).

15.    Even when state law creates the causes of action, a petition may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc.* v. *Thompson*, 478 U.S. 804, 808-09 (1986) (quoting *Franchise Tax Bd.* v. *Constr. Laborers Vacation Tr.*, 463

U.S. 1, 9 (1983)); *see Gully* v. *First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").[2]

16.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn* v. *Minton*, 568 U.S. 251, 258 (2013); *Clay v. Wells Fargo Bank*, No. CV 17-0398-CG-MU, 2017 WL 8676619, at *5 (S.D. Ala. Dec. 13, 2017) citing *Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005).  "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313-14).

---

[2] Kroger need not overcome any artificial presumptions against removal or in favor of remand. In *Breuer* v. *Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior holdings in *Shamrock Oil & Gas Corp.* v. *Sheets*, 313 U.S. 100 (1941), and its antecedents that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand. *Id.* at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . . Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception*." (emphasis added)); *see also Exxon Mobil Corp.* v. *Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides . . . Ordinary principles of statutory construction apply." (citation omitted)).

More recently, a unanimous Supreme Court in *Mims* v. *Arrow Financial Services, LLC* held: "'Divestment of district court jurisdiction' should be found 'no more readily than 'divestment of state court jurisdiction,' given 'the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331.'" 565 U.S. 368, 379 (2012) (alterations omitted) (quoting *ErieNet, Inc.* v. *Velocity Net, Inc.*, 156 F.3d 513, 523 (3d Cir. 1998) (Alito, J., dissenting)).

17.     When a purported state law claim is premised on violations of duty contained in a federal statute, a federal court has jurisdiction over that claim.  *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 67, 107 S. Ct. 1542, 1548, 95 L. Ed. 2d 55 (1987) ("[T]his suit, though it purports to raise only state law claims, is necessarily federal in character by virtue of the clearly manifested intent of Congress. It, therefore, "arise[s] under the ... laws ... of the United States.") (internal quotations omitted).

18.     "[F]ederal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law." *Harbor Commc'ns, LLC v. S. Light, LLC*, No. CIV.A. 14-00403-CB-B, 2015 WL 419854, at *3 (S.D. Ala. Feb. 2, 2015) citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005).

19.      "The test ordinarily applied for determining whether a claim arises under federal law is whether a federal question appears on the face of the plaintiff's well-pleaded complaint." *Cedar Creek Land & Timber, Inc. v. Guy*, No. CIV.A. 14-0565-WS-N, 2015 WL 728107, at *2 (S.D. Ala. Feb. 18, 2015).

20.     Federal jurisdiction is established if there is no "state law grounding for the duty that the [plaintiff] would need to establish for the Defendants to be liable," because the absence of any such state source "means that the duty would have to be drawn from federal law." *Id.* at 723.

21.     "When only state-law claims are asserted in a complaint, a claim 'aris[es] under" federal law if it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Alabama, ex rel Rich v. 50 Serialized JLM Games, Inc.*, No. CV 14-00066-CG-B, 2014 WL 12597041, at *3 (S.D. Ala. July 3, 2014) citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314, 125 S. Ct. 2363, 162 L.Ed. 2d 257

(2005).

22.     A claim premised on the breach of such a duty "cannot be resolved without a determination whether . . . federal statutes create [such] a duty," and therefore necessarily raises a federal question. *Id.*; *see also Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1296 (11th Cir. 2008) ("[t]he meaning of the [disputed] federal tax provision [was] an important issue of federal law that sensibly belong[ed] in federal court).

23.     As set forth below, Plaintiffs' tort claims meet all four requirements.

24.     Although Plaintiffs ostensibly plead some of their theories of recovery against the National Retail Pharmacies as state law claims, they base their underlying theory of liability on alleged violations of federal law or alleged duties arising out of federal law, specifically the CSA.

25.     Plaintiffs rely on the Alabama Uniform Controlled Substances Act ("AUCSA"), Ala. Code 1975 §§ 20-2-1, et seq.  Complaint ¶¶ 599.  But, this statute does not establish a duty to report or halt suspicious orders. The AUCSA cites that "compliance with the provisions of *federal law*" are required, and this notion is incorporated within the entire Act.  Ala. Code 1975 § 20-2-57.

26.     Plaintiffs cite Ala. Code 1975 § 20-2-51 and § 20-2-56 for the proposition that the AUCSA requires defendants to report unlawful diversion and to report and prevent suspicious orders.  Complaint ¶¶ 598-600.  Meanwhile, Ala. Code 1975 § 20-2-51 and § 20-2-56 do not contain any of that language, and neither do the rest of the provisions of the AUCSA.  Those sections merely require "registrants to maintain records in conformity with requirements of federal law and 'with any additional rules issued by the State Board of Medical Examiners, the State Board of Health, or the State Board of Pharmacy,'" and require registrants to "obtain annually a registration issued by the certifying boards in accordance with its rules."  Ala. Code 1975 § 20-2-

51 and § 20-2-56.

27.    Even if the AUCSA did include a duty to divert, halt, or report suspicious orders, such language would only bolster Kroger's argument that suspicious order reporting duties stem from federal law, not state law.

28.    For instance, Plaintiffs plead that Kroger and the other Distributor Defendants violated federal law with, among others, the following allegations:

a.  "In addition to reporting all suspicious orders, the Distributor Defendants must also stop shipment on any order which is flagged as suspicious and only ship orders which were flagged as potentially suspicious if, after conducting due diligence, the recipient can determine that the order is not likely to be diverted into illegal channels."  Complaint at ¶ 601.

b.  "Defendants knew that federal and state law require hospitals to admit and treat opioid-addicted patients."  *Id*. at ¶ 877.

c.  "Defendants violated both State Law and Federal Controlled Substances Act in failing to report suspicious orders of opioid pain medications in Alabama." *Id*. at ¶ 953.

d.  "Defendants' failure to comply with Alabama law and the CSA constitutes negligence per se.'" *Id*. at ¶ 956.

e.  "The harm that has occurred is the type of harm that the AUCSA and the CSA were intended to guard against." *Id*. at ¶ 964.

f.  "Alabama law and the CSA require that the Defendants know their customers, which includes an awareness for the customer base, knowledge of the average prescriptions filled each day, the percentage of controlled substances compared to overall purchases, a description of how the dispenser fulfills its responsibility to ensure that prescriptions filled are for legitimate medical purposes, and identification of physicians and bogus centers for the alleged treatment of pain that are the dispenser's most frequent prescribers." *Id*. at ¶ 957.

g.  "The DEA, among others, has provided extensive guidance to pharmacies concerning their duties to the public.  The guidance advises pharmacies how to identify suspicious orders and other evidence of diversion." *Id*. at ¶ 815.

h.  "The Marketing and Supply Chain Defendants distributed opioids in an improper manner by . . . distributing and selling opioids without maintaining

effective controls against diversion." *Id*. at ¶ 971(b).

    i.  "The Supply Chain Defendants had a duty to disclose by virtue of these Defendants' other representations, including but not limited to . . . that they failed to maintain effective controls against diversion of particular controlled substances into other than legitimate medical scientific and industrial channels by sales to certain customers." *Id*. at ¶ 1021(c).

    j.  "Defendants failed to report suspicious orders, prevent diversion, or otherwise control the supply of opioids flowing into communities across America. Despite the notice described above, Defendants continued to pump massive quantities of opioids into communities in disregard of their legal duties to control the supply, prevent diversion, and report and take steps to halt suspicious orders." *Id*. at ¶ 662.

29.    The source of the asserted legal duties to prevent diversion and to monitor, investigate, and report suspicious orders of controlled substances is the CSA and its implementing regulations. *See* 21 U.S.C. § 823(b), (e); *id*. § 832; *id*. § 842(c)(1)(B); 21 C.F.R. §§ 1301.71, .74(b).

30.    The source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the Drug Enforcement Administration ("DEA") of the United States Department of Justice.

31.    The DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses. *See Masters Pharm., Inc.* v. *DEA*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, Revocation of Registration, 72 Fed. Reg. 36,487, 36,501, 2007 WL 1886484 (DEA July 3, 2007), as source of DEA's "Shipping Requirement").

32.    Plaintiffs' theories of liability against Kroger and the other Defendants, as pleaded in the Complaint, are thus predicated on allegations that Defendants breached alleged duties under

the CSA to implement effective controls against diversion and to detect and report "suspicious" orders for prescription opioids.

33.    Plaintiffs therefore have pleaded federal questions merely dressed up as state law claims.

34.    The federal question presented by Plaintiffs' claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

35.    ***First***, Plaintiffs' state law claims "necessarily raise" a federal question. That is because Plaintiffs' asserted right to relief under state law necessarily requires resolution of a federal question. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 405, 101 S. Ct. 2424, 2431, 69 L. Ed. 2d 103 (1981) ("'[a]rtful pleading' by plaintiffs cannot 'convert their essentially federal law claims into state law claims.'"); *see Virgin Islands Hous. Auth.* v. *Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law *or if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles.") (emphasis added); *Bd. of Commissioners of Southeast Louisiana Flood Protection Agency—East* v. *Tennessee Gas Pipeline Company, L.L.C.*, 850 F.3d 714, 722-23 (5th Cir. 2017) (federal question necessarily raised where negligence and public nuisance claims relied on the court's interpretation of the scope of a duty of care contained in federal law); *Hughes* v. *Chevron Phillips Chemical Co., LP*, 478 F. App'x 167, 170-71 (5th Cir. 2012); *see also N. Carolina ex rel. N. Carolina Dep't of Admin.* v. *Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under

federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration omitted)); *Cedar Creek Land & Timber, Inc. v. Guy*, No. CIV.A. 14-0565-WS-N, 2015 WL 728107, at *4 (S.D. Ala. Feb. 18, 2015) ("a nominally state-law cause of action may support the exercise of federal question jurisdiction when a substantial federal question is embedded in that claim").

36.   Federal law is not only "mere[ly] implicated" here. *Cedar Creek Land & Timber, Inc. v. Guy*, No. CIV.A. 14-0565-WS-N, 2015 WL 728107, at *4 (S.D. Ala. Feb. 18, 2015) citing *Mannsfeld v. Phenolchemie, Inc.,* 466 F.Supp.2d 1266, 1269 (S.D.Ala.2006).   Plaintiffs' allegations encompass far more than just "some interpretation" of federal law; rather, Plaintiffs' entire Complaint is grounded in duties created by federal law. *Id.*

37.   Plaintiffs' claims against Kroger and the other Distributor Defendants require Plaintiffs to establish that Defendants breached duties established exclusively under federal law by failing to monitor, investigate, and report shipments of otherwise lawful orders of controlled substances or by otherwise failing to maintain controls against diversion.

38.   Plaintiffs may not "avoid removal jurisdiction by artfully casting their essentially federal law claims as state-law claims." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (citations and quotation marks omitted).   Where it appears that the Plaintiffs may have carefully crafted the complaint to circumvent federal jurisdiction, this Court should "consider whether the facts alleged in the complaint actually implicate a federal cause of action." *Id*. at 561.

39.   The Complaint entirely fails to cite any Alabama statutory or regulatory provision imposing a duty on dispensers of prescription medications to "monitor prescription orders," in the dispensing of prescription opioids.   This is because, as explained above, these duties necessarily

11

arise under the federal CSA and regulations.

40.     While a plaintiff is the master of its petition, and it "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar, Inc.* v. *Williams*, 482 U.S. 386, 392 (1987) (emphasis added), Plaintiffs here rely on violations of federal law as the basis for their state-law claims).[3]

41.     "It is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint"). *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 471, 118 S. Ct. 921, 923, 139 L. Ed. 2d 912 (1998); *Cedar Creek Land & Timber, Inc. v. Guy*, No. CIV.A. 14-0565-WS-N, 2015 WL 728107, at *4 (S.D. Ala. Feb. 18, 2015).

42.     Even if "state law create[d]" Plaintiffs' causes of action, their case can still "arise under" the laws of the United States if a well-pleaded complaint established that "its right to relief under state law requires resolution of a *substantial question of federal law* in dispute between the parties." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 13, 103 S. Ct. 2841, 2848, 77 L. Ed. 2d 420 (1983) (emphasis added).

43.     In sum, despite Plaintiffs' attempt to disguise the federal question, the Complaint necessarily raises a federal issue: whether the Distributor Defendants violated the CSA.

---

[3] Furthermore, it is not necessary for federal jurisdiction that Kroger establish that *all* of Plaintiffs' counts raise a federal question. Even if Plaintiff could prove one or more of those counts without establishing a violation of federal law, this Court still has federal question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago* v. *Int'l College of Surgeons*, 522 U.S. 156, 166 (1997). Because the Court has original jurisdiction over at least some counts against Defendant, it has supplemental jurisdiction over Plaintiffs' remaining counts against Defendant, and other Defendants, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a).

44.     **Second**, this federal issue is "actually disputed" because the parties disagree as to the existence and scope of alleged duties arising under the CSA and whether the Distributor Defendants violated any duties arising under the CSA.  Indeed, this federal issue is the "central point of dispute."  *Gunn*, 568 U.S. at 259.

45.     **Third**, the federal issue presented by Plaintiffs' claims is "substantial."[4] "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Id.* at 260. Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine 'the development of a uniform body of [federal] law.'"  *Id.* at 260-61 (first quoting *Grable*, 545 U.S. at 315; then quoting *Bonito Boats, Inc.* v. *Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989)).  As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  545 U.S. at 312.

46.     Plaintiffs' theories of liability necessarily require that a court determine a question relating to the important federal issue of regulation of controlled substances.  Indeed, Congress designed the CSA with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a *unified approach* to narcotic and dangerous drug control."  H.R. Rep. No. 1444, 91st Cong., 2nd Sess. (1970), *as reprinted in* 1970

---

[4] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the underlying merits of Plaintiffs' claims and has no bearing on the strength of those claims. *See Gunn*, 568 U.S. at 260 ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

U.S.C.C.A.N. 4566, 4571-72.

47.     The text of the CSA itself notes that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801.  Thus, "[g]iven that . . . the plaintiffs' claims turn on the interpretation of the federal regulations governing" the distribution of controlled substances "and the importance of those regulations to the Congressional scheme, this case plainly falls within the narrow swath of cases described in *Grable*." *Anversa* v. *Partners Healthcare Sys., Inc.*, 835 F.3d 167, 174 n.5 (1st Cir. 2016).

48.     Plaintiffs' attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action.  In *Grable*, the Supreme Court held that lack of a federal cause of action does not foreclose federal-question jurisdiction.  The Court stated that applying *Merrell Dow* too narrowly would both "overturn[] decades of precedent," and convert[] a federal cause of action from a sufficient condition for federal question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317.

49.     Just like the Court stated in *Bellido*, if "Plaintiffs wanted to avoid federal question jurisdiction and preclude removal, then they should not have specifically sought relief" pursuant to a federal statute.  *Bellido v. Timescape Mktg., LLC*, No. 610CV653ORL31KRS, 2010 WL 11626762, at *2 (M.D. Fla. June 14, 2010).  Here, "federal question jurisdiction" exists because the AUCSA does not have its own reporting requirement; that is exclusively a federal requirement upon which Plaintiffs have based their claims.  Thereby, Plaintiffs' claims markedly present "a substantial federal question." *Brown v. Endo Pharm., Inc.*, 38 F. Supp. 3d 1312, 1320 (S.D. Ala.

2014).

50.    Removal is especially appropriate here because Plaintiffs' action is one of thousands of similar actions nationwide, most of which are pending in the MDL in the Northern District of Ohio.  Indeed, Plaintiffs claim that both the "opioid epidemic" and Defendants' alleged misconduct occurred on a national scale. *E.g,* Complaint ¶¶ 12, 15, 17, 27, 31, 35, 37.   And Plaintiffs rely on enforcement actions and settlements in jurisdictions outside of Alabama to establish wrongful conduct. *E.g., id.* ¶¶ 664-670.   The MDL bellwether proceedings have substantially advanced and are set for trial in 12 days in October 2019.

51.    ***Fourth***, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors and litigating this case in a state court runs the risk of the state court applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA—the DEA—applies them. Federal jurisdiction is therefore properly exercised under § 1331 to resolve "disputed issues of federal law" under the CSA.

52.    In sum, removal of this action is appropriate because Plaintiffs' "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also Bellido v. Timescape Mktg., LLC,* No. 610CV653ORL31KRS, 2010 WL 11626762, at *2 (M.D. Fla. June 14, 2010)  (citing *Mobil Oil Corp. v. Coastal Petroleum Co*., 671 F.2d 419, 422 (11th Cir. 1982) (the "federal right" that forms the basis of Plaintiffs' claim is such that the "claim will be supported if the federal law is given one construction or effect and defeated if it is given another").

53.     Thus, Plaintiffs "clearly raised a federal question on the face of the Complaint." *Bellido v. Timescape Mktg., LLC*, No. 610CV653ORL31KRS, 2010 WL 11626762, at *2 (M.D. Fla. June 14, 2010).

54.     To the extent that the Court determines that some, but not all, of Plaintiffs' claims state a substantial federal question, the Court can evaluate whether to retain the non-federal claims against the Defendants under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a).

2.     **THIS ACTION IS REMOVABLE UNDER CAFA**

55.     Plaintiffs' lawsuit is also removable under CAFA because: (i) litigation of this case in federal court promotes CAFA's overall purpose; (ii) the lawsuit essentially is a class action suit; and (iii) each of CAFA's statutory requirements is satisfied. Jurisdiction under CAFA is measured at the time of removal. 28 U.S.C. § 1332(d); *Anthony* v. *Small Tube Mfg. Corp.*, 535 F. Supp. 2d 506, 512 (E.D. Pa. 2007).

A.     **This is an Interstate Case of National Importance.**

56.     First, this lawsuit is the type of case that Congress intended to be litigated in federal court when it enacted CAFA.  Congress's overall purpose in enacting CAFA was "to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications." S. Rep. No. 109-14, at 35 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 34; *see Dart Cherokee Basin Operating Co.* v. *Owens*, 135 S. Ct. 547, 554 (2014) ("CAFA's primary objective is to ensur[e] Federal court consideration of interstate cases of national importance") (citations and quotations omitted); *Kaufman* v. *Allstate New Jersey Ins. Co.*, 561 F.3d 144, 149 (3d Cir. 2009).

57.     This case is one of over a thousand cases filed across the country in which entities have sued opioid prescription manufacturers, distributors, and others for harms arising from the

16

abuse of these drugs. The Opiate MDL alone has more than 2,000 individual cases that have become part of a national narrative involving an opioid "crisis" and epidemic purportedly besieging Alabama and the rest of the country. Plaintiffs have scripted the Complaint from complaints in cases that already are being litigated in the Opiate MDL.

58.    For example, Plaintiffs assert that their claims touch upon issues of national importance, as well as duties under federal law. *See, e.g.,* Complaint ¶ 987 (citing that the Food and Drug Administration and the Centers for Disease Control have confirmed that the Marketing Defendants' misrepresentations of the risks and benefits of opioids were not supported by or were directly contrary to the scientific evidence"); *id.* at ¶ 219 ("The CDC has also identified addiction to prescription pain medication as the strongest risk factor for heroin addiction."); *id.* at ¶ 218 ("In 2011, the U.S. Department of Health and Human Resources, Centers for Disease Control and Prevention, declared prescription painkiller overdoses at epidemic levels."); *id.* at ¶ 634-635 (Defendants were well aware they had an important role to play in preventing diversion and to report and take steps to halt suspicious orders, "and also knew or should have known that their failure to comply with their obligations would have serious consequences").

59.    As Plaintiffs aver, the issues in this case implicate factual and legal issues that span well beyond State lines, and as a result, should be litigated in federal court along with the other lawsuits in the Opiate MDL for a more efficient proceeding. Indeed, in denying remand in another prescription opioid case, one court observed the following:

> Here, where the opioid epidemic is pervasive and egregious, there is at least a possibility of prejudice to the defendants at the hands of a jury drawn exclusively from the very county that is the plaintiff in this suit. A federal jury casts a wider net and is drawn from a division that comprises several counties. All may have an opioid problem, but not one that is specific to the plaintiff county.

17

*City of Huntington* v. *AmerisourceBergen Drug Corp., et al.*, 3:17-01362, 2017 WL 3317300, at *2 (S.D. W. Va. Aug. 3, 2017).

58.    Plaintiffs, like the other plaintiffs in the Opiate MDL, have alleged that the distributor Defendants failed to make reports to the DEA. *See* Complaint ¶ 636 ("The Marketing Defendants failed to monitor, report, and halt suspicious orders of opioids as required by law.")

59.    Accordingly, litigation of these cases requires coordination with the DEA. The Honorable Judge Dan Aaron Polster of the United States District Court for the Northern District of Ohio, presiding over the Opiate MDL, has established protocols for the DEA to provide this information.

60.    In short, jurisdiction in this matter is consistent with and promotes the purpose of CAFA.

**B.    This Case Essentially Is a Class Action.**

61.    Second, CAFA applies here because this case essentially is a class action. While Plaintiffs have not alleged a putative class action on the face of its Complaint, in reality, this lawsuit is a class action in all but name.

62.    "Congress intended CAFA to encourage the litigation of certain class actions— 'cases of national importance'—in federal courts, so as to minimize bias against out-of-state defendants and promote the fair application of state law to the multifarious parties in class actions." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1197 (11th Cir. 2007); CAFA § 2, 119 Stat. at 5.

63.    In this circuit and elsewhere, courts consistently prioritize substance and function over form when characterizing the nature of a dispute or claim . . . This is particularly true in the context of "class" or "representative" proceedings.  *AT&T Mobility LLC* v. *Smith*, No. 11-cv-5157, 2011 WL 5924460, at *5 (E.D. Pa., Oct. 6, 2011) (quoting *Jarbough* v. *AG of the United States*,

483 F.3d 184, 189 (3d Cir. 2007)) ("'We are not bound by the label attached by a party to characterize a claim and will look beyond the label to analyze the substance of a claim. To do otherwise would elevate form over substance and would put a premium on artful labeling.'").

64.     CAFA provides that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. 1332(d)(2); *see Standard Fire Ins. Co.* v. *Knowles*, 133 S. Ct. 1345, 1348 (2013) (quoting 28 U.S.C § 1332(d)(2) and (d)(5)(B) and holding that jurisdiction exists under CAFA "if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'"). CAFA "calls upon federal district court judges to look beyond the face of a complaint when determining whether federal jurisdiction exists over a matter that appears to be a class action in all but name." *W. Va. ex rel. McGraw*, 705 F. Supp. 2d at 452 (holding defendant properly removed action brought by the State of West Virginia against Comcast under CAFA because subscribers were the real parties in interest).

65.     CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar state statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332 (d)(1)(B); *see W. Va. ex rel. McGraw,* 705 F. Supp. 2d at 452.

66.     Consistent with Congress's overall objective in favoring federal diversity jurisdiction over class actions with interstate ramifications, "the definition of 'class action' is to be interpreted liberally.  Its application should not be confined solely to lawsuits that are labelled 'class actions' . . . . Generally speaking, lawsuits that resemble a purported class action should be

considered class actions for the purpose of applying these provisions." S. Rep. No. 109-14, at 35 (2005), as reprinted in 2005 U.S.C.C.A.N. 3, 34. This is true even if an action does not seek class certification. 28 U.S.C. § 1332 (d)(1)(D) (defining "class members" for purposes of CAFA as "the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action"). Courts construe complaints generously in favor of jurisdiction and should not employ any presumption against removability. *See Dart Cherokee*, 135 S. Ct. at 550 ("[N]o antiremoval presumption attends cases invoking CAFA, a statute Congress enacted to facilitate adjudication of certain class actions in federal court.").

67.    Here, Plaintiffs purport to bring claims on behalf of "among others, individuals, families, and hospitals," Complaint ¶ 705. Plaintiffs' contention confirms that it is seeking to act as a representative for a class of residents and entities who were allegedly harmed, either directly or indirectly, by the Defendants' purported misbranding of opioid drugs or other misconduct.

68.    Elsewhere, Plaintiffs emphasize that Defendants have inflicted both economic and non-economic injuries on the members of their communities. *See, e.g.,* Complaint ¶ 238 ("Each Marketing Defendant's conduct, and each misrepresentation, contributed to an overall narrative that aimed to – and did – mislead doctors, patients, and payors about the risks and benefits of opioids."); *id*. at ¶ 548 ("The Defendants created a body of false, misleading, and unsupported medical and popular literature about opioids that (a) understated the risks and overstated the benefits of long term use . . . ."); *id*. at ¶ 799 (Manufacturer Defendants' false propositions were designed to "mislead physicians, patients, health care providers, and health care payors"); *id*. at ¶ 986(a) (Defendants' interference with these rights of Plaintiffs in unreasonable because it has harmed and will continue to harm the public health services of and public peace of Plaintiffs").

20

69.    Plaintiffs' alleged injuries derive only as a result of its residents' alleged injuries and thus cannot be separated from the injuries that it alleges its residents have incurred.  Plaintiffs seek to recover costs in providing law enforcement, medical, and social services for opioid addiction, emergencies, and overdose deaths, all of which stem ***only*** from its residents' opioid abuse and addiction.

70.    Plaintiffs' Complaint also satisfies CAFA's 100-member requirement because the putative class consists of thousands of residents and at least hundreds injured.  *See* 28 U.S.C. § 1332(d)(5)(B); see *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1202 (11th Cir. 2007) ("[A] mass action must involve the proposed 'monetary relief claims of 100 or more persons[.]'")

71.    Here, Plaintiffs allege that the Defendants' deceptive practices have caused the opioid epidemic and, in 2014, the overdose rate in Alabama was "twenty percent (20%)" higher than in 2013."  Complaint ¶ 3.  Plaintiff further alleges that the "in 2017, there were 422 overdose deaths involving opioids in Alabama – a rate of 9.0 deaths per 100,000 persons and over half the national rate of 14.6 deaths per 100,000 persons." *Id*.  Thus, the potential number of people who have been or may be affected well exceeds the 100-member requirement under CAFA.

C.    **Minimal diversity exists between Plaintiffs and Defendants under CAFA.**

72.    There is minimal diversity between Plaintiffs and Defendants.  District courts have original jurisdiction under CAFA of "any civil action in which the controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2). CAFA thus eliminates the requirement of complete diversity. Instead, CAFA requires only minimal diversity—meaning that the parties are diverse if the plaintiff's citizenship differs from that of at least one defendant. 28 U.S.C. § 1332(d)(2)(A).

21

73.    A corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).

74.    For purposes of CAFA, the citizenship of any unincorporated association, such as limited partnerships and limited liability companies, also is determined by the entity's State of incorporation and principal place of business. 28 U.S.C. § 1332(d)(10).

75.    Applying these principles, there is minimal diversity between the parties.  Plaintiffs are Alabama and Delaware limited liability companies, corporations, and limited partnerships, and the putative class members are also residents of Alabama.  And many of the Defendants are citizens of States other than Alabama.  For example:

a.    Defendants Purdue Pharma Inc. and The Purdue Frederick Company, Inc. are New York corporations with headquarters and a principal place of business in Connecticut. They are, accordingly, citizens of New York and Connecticut.

b.    Defendant Johnson & Johnson is a New Jersey corporation with its principal place of business in New Jersey. Accordingly, it is a New Jersey citizen.

c.    Defendant Watson Laboratories, Inc. is a Nevada corporation with its headquarters in California. Accordingly, it is a citizen of Nevada and California.

d.    Defendant Cardinal Health Inc. is an Ohio Corporation with its headquarters in Ohio. Accordingly, it is a citizen of Ohio.

e.    Defendant Mark Timney is a resident, and thus citizen, of Connecticut.

f.    Defendants Kathe Sackler, Jonathan Sackler, and Beverly Sackler are residents, and thus citizens, of Connecticut.

g.    Defendants Mortimer Sackler, David Sackler, and Ilene Sackler Lefcourt are residents, and thus citizens, of New York.

76.    Because there is diversity of citizenship between Plaintiffs and at least one Defendant, this action meets the minimal diversity requirement under Section 1332(d)(2)(A).

### C.     The Amount in Controversy Exceeds the Jurisdictional Limit.

77.     The amount in controversy exceeds CAFA's jurisdictional threshold. Although Plaintiffs allege no specific amount of damages, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014).

78.     In ascertaining the amount in controversy, "the claims of the individual class members shall be aggregated." 28 U.S.C. § 1332(d)(6).

79.     There is an "amount in controversy requirement of an aggregate of $5,000,000 in claims." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1202–03 (11th Cir. 2007).

80.     Here, Plaintiffs allege a number of different injuries from opioid abuse and addiction. Plaintiffs allege that "excessive numbers of opioids have been dispensed in Plaintiffs' communities.  From 2006 to 2012, there were 1,703,752,769 prescription pain pills supplied to Alabama.  From 2006 to 2012, there were 6,284,580 prescription pain pills, enough for 67 pills per person per year, supplied to Conecuh County, Alabama . . . . " *E.g.,* Complaint ¶¶ 2-7.  Plaintiffs allege that the conduct has been occurring since the 1990's.  Complaint, ¶¶ 11, 228.

81.     Given the extent of the alleged injuries and time period, the alleged amount in controversy easily exceeds $5 million.[5]

### D.     The commonality requirement is satisfied.

82.     Lastly, there is "a commonality requirement" that the plaintiffs' claims must

---

[5] The amount in controversy represents only what Plaintiff requests at this stage of the proceeding. This is not an admission that Plaintiff is entitled to recover this amount. *See Hartis* v. *Chi. Title Ins. Co.*, 694 F.3d 935, 945  (8th Cir. 2012) ("The removing party need not confess liability in  order to show that the controversy exceeds the threshold.") (internal citations and quotes omitted).

"involve common questions of law or fact." *Lowery v. Alabama Power Co*., 483 F.3d 1184, 1203

(11th Cir. 2007).  Here, there is no question that Plaintiffs' claims allege "common questions of

law or fact." *Id.*

**III.**          **FRAUDULENT JOINDER & NOMINAL DEFENDANTS**

84.   In general, "all defendants must join in a removal petition in order to effect

removal." *Newman v. Spectrum Stores, Inc*., 109 F.Supp.2d 1342, 1345 (M.D. Ala. 2000) (quoting

*Northern Illinois Gas Co. v. Airco Indus. Gases, Div. of Airco, Inc.,* 676 F.2d 270, 272 (7th Cir.

1982)); *see also Russell Corp. v. American Home Assur. Co.,* 264 F.3d 1040, 1049 (11th Cir.

2001).  There are four exceptions to this rule:  "(1) when the non-consenting defendant was not

properly served at the time the removal petition is filed; (2) when the non-consenting defendant is

merely a nominal or formal party; (3) when the non-consenting defendant was fraudulently joined;

and (4) when the removed claim is separate and independent from other aspects of the lawsuit filed

in state court as defined by 28 U.S.C. § 1441(c)."  *Coile v. Utica Mut. Ins. Co*., No. CV 05-0258-

CG-B, 2005 WL 8158777, at *1 (S.D. Ala. June 24, 2005).

85.   The Southern District of Alabama has recognized the principle that "nominal

defendants need not join in or consent to removal." *GMFS, LLC v. Bounds*, 275 F. Supp. 2d 1350,

1353 (S.D. Ala. 2003); s*ee also EMC Mortg. Corp. v. Vazquez*, No. 2:09-CV-1427-TMP, 2009

WL 10703297, at *2 (N.D. Ala. Dec. 4, 2009) ("The consent of mere 'nominal' or fraudulently

joined defendants is not necessary for a proper removal.") (citing *Hernandez v. Seminole County,*

*Fla.*, 334 F.3d 1233 (11th Cir. 2003); *Hart v. Yamaha-Parts Distributors, Inc.*, 787 F.2d 1468,

1469-70 (11th Cir. 1986); *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011);

*Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir.1998).

86.   Here, the factual allegations of the complaint preclude any finding of liability on

24

the part of the Purdue Sales Representative Defendants.  The Complaint has many allegations that the Purdue entities aggressively directed, pressured, trained, and controlled the message being pushed by the Purdue Sales Representative Defendants, but *no* allegations saying that the Purdue Sales Representatives named in the complaint were aware that what they were misrepresenting anything to doctors.  *See,* Complaint, ¶¶ (99, 114, 246, 298, 319, 360, 370, 390, 407, 418, 558, 585).  Thus, their presence in this litigation is nominal, and in their "absence . . .  the Court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to [P]laintiff[s]." *GMFS, LLC v. Bounds*, 275 F. Supp. 2d 1350, 1353 (S.D. Ala. 2003); *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen and Assistants' Union of North America*, 427 F.2d 325, 327 (5th Cir. 1970).

87.     While a number of courts have reviewed the issue of fraudulent joinder in the context of defeating diversity jurisdiction, "courts have held that the rationale for the doctrine of fraudulent joinder applies with equal force in the context of removal based on federal question jurisdiction."  *Diaz v. Kaplan Univ.*, 567 F. Supp. 2d 1394, 1403 (S.D. Fla. 2008) (citing *Hauck v. Borg Warner*, *Corp.*, 2006 WL 2927559, *5 (M. D. Fla.2006); *In re Pharm. Indus. Average Wholesale Price Litig.*, 431 F.Supp.2d 109, 118 (D. Mass. 2006)).

88.     To establish fraudulent joinder, "[t]he removing party must prove one of two options: (1) there is no possibility the plaintiff can establish a cause of action against the non-consenting defendant; *or* that (2) plaintiff colluded with the non-consenting defendant to defeat removal."  Diaz, 567 F. Supp. 2d at 1402-1403.

89.     As stated above, the Removing Defendants have sought and received consent from each of the properly served defendants except for a single individual—Vanessa Weatherspoon, a

former Purdue Pharma sales representative.  She is one of seven sales representatives named individually, and it is clear from the Complaint that these defendants were fraudulently joined.

90.    Here, the factual allegations of the complaint preclude any finding of liability on the part of the Purdue Sales Representative Defendants.

91.    Plaintiffs allege repeatedly that Purdue aggressively directed, pressured, trained, and controlled the message being pushed by the sales representatives, but there are no allegations that the sales representatives named in the complaint were aware that what they were misrepresenting anything to doctors.  See Compl. ¶¶ 99, 114, 246, 298, 319, 360, 370, 390, 407, 418, 558.

92.    Early in the Complaint, Plaintiffs assert that the sales representatives are included in a group they refer to as "Purdue Individual Defendants." *Id.* at ¶ 108.  However, later in the Complaint it is clear that the other defendants in this group are distinct from the sales representatives:  "At one point, the Purdue Individual Defendants wanted to know if sales reps could sell more by remaining silent about the failed trial." *Id.* at ¶ 558.

93.    These allegations are at odds with a finding of liability against the sales representative defendants, and confirm that the representatives have no liability for the claims alleged outside of their actions directed by and performed on behalf of Purdue.  *See Culpepper v. Stryker Corp.*, 968 F. Supp. 2d 1144, 1152 (M.D. Ala. 2013) (finding pharmaceutical sales representative fraudulently joined in diversity context where she had no potential liability under medical device liability theory) (also citing *In re Rezulin Products Liability Litigation*, 133 F.Supp.2d 272 (S.D.N.Y.2001), *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *1 (M.D.Ala.2005), *Southern v. Pfizer, Inc.*, 471 F.Supp.2d 1207 (N.D.Ala.2006), and *Patterson v. DePuy Orthopaedics, Inc.*, 2011 WL 3047794, at *1 (N.D.Ohio 2011)); *see also Anderson v.*

26

*Merck & Co. Inc.*, 417 F. Supp. 2d 842, 847 (E. D. Ky. 2006) (recognizing that an employee is personally liable for her own tortious conduct, but must have been aware of the scheme to be held liable for it).

94.     There is no reasonable basis, and no reasonable basis is alleged in the Complaint, from which it may be inferred that the Purdue Sales Representative Defendants did anything from which liability on its part could flow to Plaintiffs.

95.     For these reasons, the lack of consent from a single, fraudulently joined, sales representative defendants should not bar removal of this action to federal court.

**IV.            COMPLIANCE WITH PROCEDURAL REQUIREMENTS.**

95.  Kroger has satisfied all the procedural requirements for removal under 28 U.S.C. § 1446.

96.  Kroger is filing this Notice of Removal pursuant to 28 U.S.C. § 1441(a) in the United States District Court for the Southern District of Alabama, because  the  State  court  in which  the  action  is pending,  the  Court of Conecuh County, Alabama, is within this federal judicial district. This Notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

97.  Plaintiffs  served  the  Summons  and  Complaint  on  Kroger  on  or  after September 9, 2019.  Kroger is removing the case within 30 days of that date; therefore, this removal is timely under 28 U.S.C. § 1446(b). *See Murphy Bros., Inc.* v. *Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999).

98.  In accordance with 28 U.S.C. § 1446(a), a copy of "all process, pleadings, orders, and other documents then on file in the State Court," are attached as **Exhibit 1**.

99.  In accordance with 28 U.S.C. § 1446(d), promptly after filing this Notice, Kroger will "give written notice thereof to all adverse parties," and will "file a copy of the notice with

the clerk" of the Circuit Court. A true and correct copy of the Notice to Plaintiffs and Notice to the State Court of Filing of Notice of Removal will be filed as separate documents.

100. Under CAFA, "[a] class action may be removed . . . by any defendant *without* the consent of all defendants." 28 U.S.C. § 1453(b) (emphasis added).

101. In accordance with 28 U.S.C. § 1446(b)(2)(A), and as set forth in **Exhibit 2**, all defendants that have been properly joined and served in this action join in or consent to this removal on the basis of federal question jurisdiction.[6]

102. Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment Kroger's right to assert any and all defenses or objections to the Complaint, including lack of personal jurisdiction. If there are any questions that arise as to the propriety of removal of this action, Kroger respectfully requests the opportunity to submit briefing, argument, and additional evidence as necessary to support removal of this case.

Dated: October 9, 2019

Respectfully submitted,

/s/ Sela S. Blanton
Sela S. Blanton
Elizabeth L. Nicholson
Bainbridge, Mims, Rogers & Smith, LLP
600 Luckie Drive, Suite 415
P.O. Box 530886
Birmingham, AL 35253
Main: (205) 879-1100
Fax: (205) 879-4300

---

[6] On September 15, 2019, Purdue Pharma L.P. and its affiliated debtors filed voluntary petitions for relief under chapter 11 of United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. Purdue Pharma L.P.'s case is docketed as *In re Purdue Pharma L.P.*, No. 19-23649. Also, on September 18, 2019, Purdue Pharma L.P. and its affiliated debtors filed a motion for preliminary injunction seeking an order staying certain active cases to the extent not already stayed by the automatic stay. To otherwise preserve and without waiving any rights, and out of an abundance of caution, Purdue consents to removal."

sblanton@bainbridgemims.com
bnicholson@bainbridgemims.com
*Counsel for The Kroger Co.,*
*Kroger Limited Partnership II*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 9th day of October, 2019, a *Notice of Removal* was filed electronically, and parties and their counsel as shown below were served via email or U.S. Mail.

John A. McCauley, Esq.
VENABLE LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland  21202
1-410-244-7655
jmccauley@venable.com
*Counsel for Abbott Laboratories and Abbott Laboratories, Inc.*

Zachary A. Ciullo, Esq.
Timothy Knapp, Esq.
Michael Finnegan LeFevour, Esq.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  660654
312-862-3429
248-835-6924 (Mobile)
312-862-2200 (Facsimile)
Zac.ciullo@kirkland.com
tknapp@kirkland.com
Michael.lefevour@kirkland.com
*Counsel for Allergan Finance, LLC, Allergan Sales, LLC, Allergan USA, Inc., and Allergan plc*

Sarah Miller Benoit, Esq.
Joshua A. Klarfeld, Esq.
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio  45202
614-229-0016
sbenoit@ulmer.com
jklarfeld@ulmer.com
*Counsel for Amneal Pharmaceuticals, Inc., and Amneal Pharmaceuticals LLC*

James W. Matthews, Esq.
Ana M. Francisco, Esq.
Katy E. Koski, Esq.
FOLEY & LARDNER LLP
111 Huntington Avenue

Boston, Massachusetts 02199
Tel:    617.342.4000
Fax:    617.342.4001
jmatthews@foley.com
afrancisco@foley.com
kkoski@foley.com
*Counsel for Anda, Inc.*

Enu Mainigi, Esq.
Steven M. Pyser, Esq.
Ashley W. Hardin, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
spyser@wc.com
ahardin@wc.com
*Counsel for Cardinal Health, Inc.*

Alexandra W. Miller, Esq.
Zuckerman Spaeder - Washington
Ste. 1000
1800 M Street, NW
Washington, DC 20036
202-778-1845
Fax: 202-822-8106
Email: smiller@zuckerman.com
*Counsel for CVS Health Corporation, CVS Pharmacy, Inc. and CVS Indiana, L.L.C.*

Sean Morris, Esq.
Eliseo Puig, Esq.
ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa Street
44th Floor
Los Angeles, California 90017
(213) 243-4000
Sean.Morris@arnoldporter.com
Eliseo.Puig@arnoldporter.com
*Counsel for Endo Health Solutions, Inc., Endo Pharmaceuticals, Inc., Par Pharmaceutical, Inc. and Par Pharmaceuticals Companies, Inc.*

Julie Porter, Esq.
SALVATORE PRESCOTT & PORTER, PLLC

105 E. Main Street
Northville, Michigan  48167
248-679-8711
porter@spplawyers.com
*Counsel for Russell Gasdia*

David L. Brown, Jr., Esq.
H. Lanier Brown, II, Esq.
J. Patrick Strubel, Esq.
WATKINS & EAGER, PLLC
2204 Lakeshore Drive
Suite 114, West Lobby
Birmingham, Alabama  35209
205-586-6262 (David Brown)
205-5989-2199 (H. Lanier Brown)
204-937-6755 (J. Patrick Strubel)
dbrown@watkinseager.com
lbrown@watkinseager.com
pstrubel@watkinseager.com
*Counsel for AmerisourceBergen Drug Corporation and H. D. Smith, LLC f/k/a H. D. Smith Wholesale Drug Co.*

Christopher S. Berdy, Esq.
BUTLER SNOW
1819 5th Avenue North, Suite 1000
Birmingham, Alabama 35203
205-297-2200
Fax: 205-297-2201
Chris.berdy@butlersnow.com
*Counsel for Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.*

Traci J. Irvin, Esq.
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, California 94111-4006
415-315-2322
Traci.Irvin@ropesgray.com
*Counsel for Mallinckrodt, LLC, Mallinckrodt PLC and Specgx, LLC*

Patrick H. Hill, Esq.
ALSTON & BIRD LLP

1201 West Peachtree Street
Atlanta, Georgia 30309
Phone:  (404) 881-7274
Fax:  (404) 881-7777
Patrick.Hill@alston.com
_Counsel for Noramco, Inc._

Blair G. Mattei, Esq.
Michael Upchurch, Esq.
FRAZER GREENE UPCHURCH & BAKER
104 St. Francis Street, Suite 800
P. O. Box 1686 (36633)
Mobile, Alabama 36602
251-431-6020
251-431-6031 Direct
BGM@frazergreene.com
MEU@frazergreene.com
_Counsel for Purdue Pharma LP, Purdue Pharma, Inc. and The Purdue Frederick Company, Inc._

George R. Irvine, III, Esq.
STONE CROSBY, P.C.
8820 Highway 90
Daphne, Alabama 36526
Telephone:  251-626-6696
Facsimile:  251-626-2617
_Counsel for Rite Aid of Alabama, Inc., and Rite Aid of Maryland, Inc._

John P. McDonald, Esq.
Brandon J. Montminy, Esq.
C. Scott Jones, Esq.
LOCKE LORD - DALLAS
Ste. 2800
2200 Ross Avenue
Dallas, Texas 75201
214-740-8445
Email: jpmcdonald@lockelord.com
brandan.montminy@lockelord.com
sjones@lockelord.com
_Counsel for Henry Schein, Inc._

Adam Teitcher, Esq.
MORGAN, LEWIS & BOCKIUS - PHILADELPHIA
1701 Market Street
Philadelphia, Pennsylvania 19103
215-963-5000

Fax: 215-963-5001
Email: adam.teitcher@morganlewis.com
*Counsel for Teva Pharmaceutical Industries, Ltd., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Watson Laboratories, Inc., Actavis LLC and Actavis Pharma, Inc.*

Jordan Alexander, Esq.
QUINN EMANUEL, URQUHART & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
213-443-3231
jordanalexander@quinnemanuel.com
*Counsel for Mark Timney*

Anne Stone Sumblin, Esq.
Stone Sumblin Law LLC
600 Highway 52
P.O. Box 345
Kinston, Alabama 36453
Phone: 334.565.3380
Fax: 334.565.3076
Anne@stonesumblinlaw.com
*Counsel for Walgreen Eastern Co., Inc., Walgreen Co., Inc.*

Alexandra (Ali) J. Wolter, Esq.
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California  90071
213-489-3939
awolter@jonesday.com
*Counsel for Wal-Mart, Inc. and Wal-Mart Stores East, LP*

Ricardo A. Woods, Esq.
BURR & FORMAN
11 N. Water Street, #22200
Mobile, Alabama  36602
251-344-5151
Rwoods@burr.com
*Counsel for Mitchell "Chip" Fisher, Lyndsie Fowler, Chris Hargrave, Brandon Hassenfuss and Joe Read*

Steven A. Martino
Taylor Martino, P.C.
P.O. Box 894
Mobile, AL 36601
stevemartino@taylormartino.com
*Counsel for Plaintiffs*

Robert King
The King Law Firm, P.C.
36 West Claiborne Street
Monroeville, Alabama 36460
rcking@frontiernet.net
*Counsel for Plaintiffs*

John W. Barrett
Sterling Starns
David mcMullan, Jr
Richard Barrett
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square North
Lexington, MS 39095
dbarrett@barrettlawgroup.com
sstarns@barrettlawgroup.com
dmcmullan@barrettlawgroup.com
rrb@rrblawfirm.net

Jonathan W. Cuneo
Monica Miller
Mark H. Dubester
David L. Black
Jennifer E. Kelly
Evelyn Li
**CUENO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
jonc@cuneolaw.com
monica@cuneolaw.com
mark@cuneolaw.com
dblack@cuneolaw.com
jkelley@cuneolaw.com
evenlyn@cuneolaw.com
*Counsel for Plaintiffs*


Via U.S. Mail:

Johnson Russell Gibson, III
Phelps, Jenkins, Gibson & Fowler, LLP
P.O. Box 020848
Tuscaloosa, AL 35402-0848
*Counsel for Plaintiffs*

Vanessa Weatherspoon
4621 Harvest Way

Montgomery, AL  36106-3138

/s/Sela S. Blanton
Sela S. Blanton, Esq.
Betsy Richardson, Esq.
Bainbridge, Mims, Rogers & Smith, LLP
600 Luckie Drive, Suite 415
P.O. Box 530886
Birmingham, Alabama 35253
Office main: (205) 879-1100
Fax: (205) 879-4300
sblanton@bainbridgemims.com
brichardson@bainbridgemims.com
*Counsel for The Kroger Co., and Kroger Limited Partnership II*