IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DCH HEALTH CARE AUTHORITY, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION 19-0756-WS-C ) |
| PURDUE PHARMA L.P., et al., | ) ) ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the plaintiffs' motion to remand. (Doc. 6). The plaintiffs and two defendants (collectively, "Kroger") have filed briefs in support of their respective positions, (Doc. 7, 11, 13), and the motion is ripe for resolution. Kroger has also filed a motion to stay consideration of the motion to remand pending transfer of this action to the pending multi-district litigation ("MDL"). (Doc. 10). The plaintiffs have filed a response and Kroger a reply, (Docs. 14, 39), and that motion as well is ripe for resolution. After careful consideration, the Court concludes the motion to stay is due to be denied and the motion to remand is due to be granted.

## BACKGROUND

The 18 plaintiffs operate hospitals in Alabama. The 46 entity defendants are producers, distributors and retailers (all pharmacies) of opioids, and the 20 individual defendants are associated with various of the entity defendants. Kroger is among the retail pharmacy defendants.

The plaintiffs filed this lawsuit in the Circuit Court of Conecuh County. The complaint asserts six causes of action: (1) negligence; (2) public nuisance; (3) unjust enrichment; (4) fraud and deceit; (5) wantonness; and (6) civil conspiracy.

(Doc. 1-1 at 299-324). Kroger timely removed, identifying the bases of subject matter jurisdiction as federal question and the Class Action Fairness Act ("CAFA"). The plaintiffs argue that Kroger has failed to demonstrate jurisdiction under either fount. They further argue that Kroger has not complied with the unanimous consent requirement for removal.

## DISCUSSION

"On a motion to remand, the removing party bears the burden of showing the existence of federal subject matter jurisdiction." *Connecticut State Dental Association v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009); *accord City of Vestavia Hills v. General Fidelity Insurance Co.*, 676 F.3d 1310, 1313 n.1 (11th Cir. 2012).

Kroger suggests the burden is actually on the plaintiff to show the absence of federal jurisdiction, (Doc. 1 at 5 n.2), but it misreads *Breuer v. Jim's Concrete, Inc.*, 538 U.S. 691 (2003). Section 1441(a) provides that "any civil action … of which the district courts of the United States have original jurisdiction" may be removed, "[e]xcept as otherwise expressly provided by Act of Congress." *Breuer* holds only that, pursuant to this statutory language, "whenever the subject matter of an action qualifies it for removal, the burden is on a plaintiff to find an express exception." 538 U.S. at 698. The burden on the plaintiff, then, is only a burden to find an exception to removal, and that burden arises only after subject matter jurisdiction has been demonstrated by the removing defendant.

**I. Motion to Stay.**

Before addressing the motion to remand, the Court must resolve Kroger's motion to stay consideration of the plaintiffs' motion. Kroger cites a number of sister courts that have declined to consider motions to remand prior to transfer to an MDL court, but Kroger does not acknowledge this Court's opinions setting forth a framework for deciding such a motion to stay.

"A court should first give preliminary scrutiny to the merits of the motion to remand and, if this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court." *Betts v. Eli Lilly and Co.*, 435 F. Supp. 2d 1180, 1182 (S.D. Ala. 2006) (internal quotes omitted); *accord Moton v. Bayer Corp.*, 2005 WL 1653731 at *2 (S.D. Ala. 2005). The Court derived this standard from *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001). Dozens of sister courts have adopted or applied *Meyers* as well,[1] and it has been described as the majority approach. *Dunlap v. General Motors LLC*, 2016 WL 7391049 at *2 (W.D. Mo. 2016). Kroger presents no reason the Court should abandon its carefully selected standard in this case, and its arguments in favor of a stay are fully addressed by the Court's analysis in *Betts*. 435 F. Supp. 2d at 1182-87.

As discussed in Parts I and II, federal subject matter jurisdiction is plainly lacking. This absence of jurisdiction was immediately obvious on the Court's

---

[1] *E.g., Ellis v. Pneumo Abex Corp.*, 798 F. Supp. 2d 985, 988 (C.D. Ill. 2011); *Ortiz v. Menu Foods, Inc.*, 525 F. Supp. 2d 1220, 1233 (D. Haw. 2007); *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 845-46 (S.D. Ill. 2006); *Alan v. Equifax, Inc.*, 2019 WL 5801891 at *2 (C.D. Cal. 2019); *Meuchal v. Davol, Inc.*, 2019 WL 3887555 at *2 (D. Mont. 2019); *City of Portland v. Purdue Pharma, LP*, 2018 WL 6191127 at *4 (D. Me. 2018); *Tucson Medical Center v. Purdue Pharma LP*, 2018 WL 6629659 at *2 (D. Ariz. 2018); *Gonzalez v. Ford Motor Co.*, 2017 WL 9614465 at *2-3 (N.D. Cal. 2017); *Beshear v. Volkswagen Group of America, Inc.*, 2016 WL 3040492 at *2 (E.D. Ky. 2016); *Dunlap v. General Motors LLC*, 2016 WL 7391049 at *2 (W.D. Mo. 2016); *Estate of Hoholek v. AbbVie, Inc.*, 2014 WL 7205586 at *2 (N.D. Ind. 2014); *Curnow v. Stryker Corp.*, 2013 WL 5651439 at *3 (E.D. Mich. 2013); *Bocock v. Medventure Technology Corp.*, 2013 WL 5328309 at *3 (S.D. Ind. 2013); *Walker v. New England Compounding Pharmacy Inc.*, 2013 WL 1871343 at *2 (W.D. Va. 2013); *Murphy-Pittman v. DePuy Orthopaedics, Inc.*, 2012 WL 6588697 at *2 (D.S.C. 2012); *Halliburton Energy Services, Inc. v. BP Exploration & Production Inc.*, 2012 WL 149525 at *2 (S.D. Tex. 2012); *Oregon ex rel. Kroger v. Johnson & Johnson*, 2011 WL 1347069 at *3 (D. Ore. 2011); *Mills v. TexAmerican Food Blending, Inc.*, 2008 WL 11383493 at *5 (N.D. Ala. 2008); *Alegre v. Aguayo*, 2007 WL 141891 at *3 (N.D. Ill. 2007); *Baeza v. Tibbetts*, 2006 WL 2863486 at *2 (D.N.M. 2006); *Martin v. Merck & Co.*, 2005 WL 1984483 at *1 (E.D. Cal. 2005); *Wisconsin v. Abbott Laboratories*, 2004 WL 2055717 at *1 (W.D. Wis. 2004).

preliminary assessment, and the Court therefore proceeds to resolve the motion to remand.  Kroger's motion to stay is therefore **denied**.

## II. Federal Question.

The complaint asserts six causes of action, all of them sounding in state law.  That is not the end of the matter, because "federal jurisdiction over a state claim will lie if a federal issue is:  (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *accord Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005).  Kroger argues that the complaint's claims against the distributor and retail defendants "require Plaintiffs to establish that Defendants breached duties established exclusively under federal law."  (Doc. 1 at 11).  Kroger identifies the relevant federal law as the Controlled Substances Act ("CSA") and concludes that "the Complaint necessarily raises a federal issue: whether the Distributor Defendants violated the CSA."  (*Id.* at 12).

The complaint contains numerous references to the CSA, but that does not of itself establish that the complaint "necessarily raise[s]" a federal issue.  The Supreme Court has addressed the meaning of this phrase in the context of Section 1338(a), which provides for federal jurisdiction "of any civil action arising under any Act of Congress" relating to patent and related intellectual property concepts: "[A] claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to *each* of those theories."  *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 810 (1988) (emphasis added).  Because "Section 1338(a) uses the same operative language as 28 U.S.C. § 1331, … '[l]inguistic consistency' requires us to apply the same test to determine whether a case arises under § 1338(a) as under § 1331."  *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826, 829-30 (2002) (quoting *Christianson*, 486 U.S. at 808).  Appellate courts have

4

routinely applied *Christianson* in the Section 1331 context.² Although the plaintiffs relied on this case in support of their motion to remand, (Doc. 7 at 14-15), Kroger has failed to acknowledge *Christianson* or explain how removal is not defeated by its "alternative theories" principle.

Kroger identifies the duties imposed by the CSA and its implementing regulations, as referenced in the complaint, as duties to implement effective controls against the diversion of opioids, to monitor, investigate and report suspicious orders, and to suspend fulfillment of such orders. (Doc. 1 at 9-10, 11). The Court agrees that the complaint asserts the existence of such duties imposed by federal law; the question is whether the complaint pegs the liability of any defendant under any pleaded cause of action exclusively to the violation of this federal law.

According to Kroger, the complaint affirmatively states that it is the violation of these federally imposed duties that gives rise to the six asserted causes of action. (Doc. 11 at 12). None of the paragraphs cited by Kroger remotely support this proposition. On the contrary, it appears from a review of the complaint that the duties imposed by the CSA are mentioned largely to demonstrate how clear those duties – running parallel to comparable state duties – are and thus to accentuate how inexcusable was the alleged conduct of these large entity defendants, which operate on a massive and typically national scale.

In only one place does the complaint identify the CSA as a source of duty underlying an asserted claim. Count One, sounding in negligence, relies in part on negligence *per se*, and one of the statutes, violation of which is alleged to establish negligence *per se*, is the CSA. (Doc. 1-1 at 299-302). To that extent, the

---

² *E.g., Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 164 (3rd Cir. 2014); *International Union of Operating Engineers v. County of Plumas*, 559 F.3d 1041, 1045 (9th Cir. 2009); *Broder v. Cablevision Systems Corp.*, 418 F.3d 187, 194 (2nd Cir. 2005); *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc); *Howery v. Allstate Insurance Co.*, 243 F.3d 912, 918 (5th Cir. 2001); *Long v. Bando Manufacturing, Inc.*, 201 F.3d 754, 759-60 (6th Cir. 2000).

complaint relies on federal law to establish negligence. Count One, however, also relies on Alabama statutes and regulations to establish negligence *per se*. Specifically, it relies on the Alabama Uniform Controlled Substances Act ("AUCSA") and regulations promulgated thereunder. (*Id*.).

Kroger scoffs that AUCSA imposes no duty other than to follow federal law, such that federal law remains the exclusive source of duty. (Doc. 1 at 7-8). Kroger cites Ala. Code § 20-2-57, which requires an order form for distribution from one registrant to another and provides that "[c]ompliance with the provisions of federal law respecting order forms shall be deemed compliance with this section." The complaint, however, does not assert a violation of Section 20-2-57, which is thus irrelevant.

Count One does allege that the defendants violated AUCSA by failing to maintain effective controls against the diversion of opioids and by excessively dispensing controlled substances. (Doc. 1-1 at 300). The plaintiffs derive the former duty from Section 20-2-52(a)(1), which requires registering boards to consider an applicant's "[m]aintenance of effective controls against the diversion of controlled substances" in determining whether to register the applicant. The plaintiffs derive the latter duty from Section 20-2-54(a)(5), which authorizes a certifying board to suspend or revoke a registration upon finding the registrant has "excessively dispensed controlled substances." Kroger does not address these allegations and thus has failed to show either that these provisions cannot plausibly support a duty sounding in negligence[3] or that the content of any such duty is measured exclusively by federal law.

Count One also alleges the defendants violated AUCSA by failing to report suspicious orders and by failing to operate a system to stop orders that have been, or should have been, flagged as suspicious. (Doc. 1-1 at 299-300). Kroger trains

---

[3] Kroger, without citation to any authority, argues that state law must "plausibly give rise to a duty." (Doc. 11 at 13). The Court need not decide whether this "plausibility" standard is supported by law, since Kroger has failed to show the complaint does not attain it.

its firepower on these allegations, arguing that only the CSA imposes such duties. (Doc. 11 at 11-13). That proposition is far from certain.

Section 20-2-56 requires registrants to keep records consistent with federal law "and with any additional rules issued by" the certifying boards. The State Board of Pharmacy provides that "[c]opies of records and reports required by the Drug and Enforcement Administration concerning increases in purchases or high or unusual volumes purchased by pharmacies, shall be forwarded to the Board of Pharmacy." Ala. Admin. Code r. 680-X-2-.23(2)(e)5. Alabama law therefore plausibly appears to require distributors to report suspicious orders to the state. The complaint expressly relies on this provision, (Doc. 1-1 at 200, 300), but Kroger fails to address it.

There appears to be no comparably specific Alabama statutory or regulatory requirement to operate a system to stop suspicious orders, but Kroger overlooks Section 20-2-52(a)(1)'s language regarding maintenance of effective controls against the diversion of controlled substances. Given Kroger's silence, the Court declines to assume that this provision could not support a state-law duty to operate such a system.

Similarly, since Kroger does not explain how the content of any state statutory or regulatory duty to report and stop suspicious orders must perforce be supplied by federal law, the Court will not indulge any such assumption.

As explained in the preceding paragraphs, while Count One rests negligence *per se* in part on violations of the CSA, it also rests negligence *per se* on violations of AUCSA and its regulations. Kroger has failed to show that all – or any – of these asserted state-law violations either depend on non-existent state-law duties supplied by statute or regulation or that the content of those state-law duties is measured by federal law. It thus has failed to show that these alleged violations do not constitute an "alternative theory" of negligence *per se* as to which federal law is not essential. Under *Christianson*, therefore, the complaint's negligence cause of action does not "necessarily raise" a federal issue.

7

Moreover, Count One does not assert only negligence *per se*. Count One also asserts negligence based on the general duty under common law to use reasonable care, with the duty arising from the foreseeability of harm to the plaintiffs. (Doc. 1-1 at 299). Nor does the complaint assert as common-law duties only the duties identified with the CSA. Instead, the complaint asserts uniquely common-law duties against every entity defendant, including a duty not to market opioids through misleading descriptions of risks, benefits and comparisons to other treatments, and the duty not to facilitate or encourage the flow of opioids into the illegal secondary market. (*Id*. at 302-04). Kroger offers no argument regarding this portion of the negligence cause of action and thus has failed to show that it does not provide an alternative theory of recovery under this claim as to which federal law is not essential.

Kroger suggests that a federal issue is necessarily raised because the complaint "implicates the actions of" the Drug Enforcement Agency ("DEA") and because it "amounts to a collateral attack on an entire [federal] regulatory scheme." (Doc. 11 at 14, 16). The complaint does mention the DEA but, as explained above, that unremarkable fact falls far short of satisfying the stringent requirements for showing that a federal issue is "necessarily raised" by the complaint. The complaint patently presents no "collateral attack" on the federal government's controlled substances regime – on the contrary, the complaint applauds that regime while criticizing the defendants for not following it.[4] Moreover, Kroger's own authority reflects that a collateral attack on a federal scheme goes to "substantiality" (the third *Gunn* element), not to whether a federal question is "necessarily raised" (the first element).

Kroger makes no argument that any of the other five causes of action necessarily raise a federal issue, and plainly they do not. Wantonness rests on the

---

[4] Kroger itself insists that the complaint "attempt[s] to enforce the CSA," (Doc. 1 at 14), and enforcement is the antithesis of collateral attack.

same duty as negligence,[5] so Count Five is captured by the analysis above. Both public and private nuisance require a duty,[6] but that duty is either the same as that underlying the negligence claim (in which case the preceding analysis applies) or some different duty (such as the deceptive marketing Count Two alleges, (Doc. 1-1 at 306)), as to which the CSA is not implicated. Unjust enrichment requires some unconscionable conduct such as fraud,[7] and Count Three identifies the unconscionable conduct as deceptive marketing, not as anything regarding the CSA. (*Id.* at 309). Fraud depends on misrepresentations and failures to disclose, and that – not violations of the CSA – is what Count Four alleges. (*Id.* at 310-14). Count Six alleges that certain defendants conspired to violate their duties under the CSA, (*id.* at 321), but it also alleges that these and other defendants conspired to make false and misleading representations to prescribers and consumers regarding the risks, benefits and superiority of opioid therapy. (*Id.* at 318). The conspiracy claim thus raises alternative theories of liability as to these defendants, one of which theories does not implicate the CSA, thus negating a "necessarily raised" federal issue under *Christianson*.

In sum, Kroger has failed to show that the complaint necessarily raises a federal issue and has therefore failed to meet its burden of demonstrating the existence of federal question jurisdiction.

## III.  Class Action Fairness Act.

Federal courts have original jurisdiction over any civil action that "is a class action" that meets certain qualifying criteria. 28 U.S.C. § 1332(d)(2). The term

---

[5] *E.g., Armstrong Business Services, Inc. v. AmSouth Bank*, 817 So. 2d 665, 680 (Ala. 2001).

[6] *E.g., Tipler v. McKenzie Tank Lines*, 547 So. 2d 438, 440 (Ala. 1989); *City of Birmingham v. City of Fairfield*, 375 So. 2d 438, 441 (Ala. 1979).

[7] *E.g., Matador Holdings, Inc. v. HoPo Realty Investments, L.L.C.*, 77 So. 3d 139, 145-46 (Ala. 2011).

"class action" is defined as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." *Id*. § 1332(d)(1)(B).

This action is not a class action. The complaint identifies only 18 named plaintiffs. It does not invoke Alabama Rule of Civil Procedure 23, it does not use the term "class action," it does not seek certification of a class, and it does not seek relief on behalf of anyone but the named plaintiffs.

Kroger agrees with the first three of these propositions but argues they are not dispositive. (Doc. 11 at 20). Some courts have concluded that a civil action is "filed under" Rule 23 or a state analogue if its "factual allegations" so reflect, regardless of whether the complaint expressly invokes the applicable statute or rule. *E.g., Williams v. Employers Mutual Casualty Co.*, 845 F.3d 891, 901 (8th Cir. 2017). Others rule similarly that the failure to incant "class action" does not of itself shield an action from removal. *E.g., Badeaux v. Goodell*, 358 F. Supp. 3d 562, 567 (E.D. La. 2019).

To support jurisdiction under Section 1332(d), however, the action must still be a "class action." The *sine qua non* of a class action is that the named plaintiffs represent the interest of others not before the Court. Fed. R. Civ. P. 23(a) ("One or more members of a class may sue or be sued as representative parties on behalf of all members …."); Black's Law Dictionary 284 (9th ed. 2009) (defining "class action" as "[a] lawsuit in which the court authorizes a single person or a small group of people to represent the interests of a larger group …."). By describing the universe of rules supporting "class action" status as those "authorizing an action to be brought by 1 or more representative persons," and by identifying Rule 23 as such a rule, Section 1332(d)(1)(B) unambiguously demands a representative action in order to support federal jurisdiction.

Kroger resorts to legislative history for the proposition that Section 1332(d)(1)(B) is to be construed "liberally" and that, "[g]enerally speaking,

10

lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions." S. Rep. 109-14, at 35, as reprinted in 2005 U.S.C.C.A.N. 3. That same legislative history, however, confirms that Congress "defines the term 'class action' to include representative actions" filed in federal or state court. *Id*. at 30.[8] Assuming without deciding that it is proper to consult legislative history in the present context,[9] that history demonstrates an action cannot "resemble" a class action if it lacks a "representative" quality.[10] Kroger's arguments that the action should be considered a class action simply because it is a "case of national importance," or because it "implicate[s] factual and legal issues that span well beyond State lines," or because its resolution "requires coordination with the DEA," (Doc. 1 at 16-18), are thus unavailing.

Kroger insists that this is a representative action because the plaintiffs "bring claims on behalf of themselves and their patients" and "seek damages on behalf of their patients." (Doc. 11 at 3, 19). The complaint contains no such allegations. As noted, the complaint expressly identifies the plaintiffs as the 18 named plaintiffs. (Doc. 1-1 at 5, 13, 38-41). Each cause of action alleges injury only to the plaintiffs,[11] and relief is demanded only "in favor of Plaintiffs." (*Id*. at

---

[8] The report is describing Section 1711, which is substantively indistinguishable from Section 1332(d)(1)(B).

[9] The Court is generally skeptical of efforts to extend apparently unambiguous statutory language beyond its terms in the pursuit of a perceived congressional intent unexpressed in that or other statutory language. *See, e.g., Sullivan v. Wells Fargo Bank*, ___ F. Supp. 3d ___, 2019 WL 5929744 at *4 (S.D. Ala. 2019); *Jax Leasing, LLC v. Ruan*, 359 F. Supp. 3d 1129, 1137 (S.D. Ala. 2019).

[10] The cases on which Kroger relies for a watered-down "resembles" standard each involved a representative action and thus do not suggest it is a dispensable requirement.

[11] The only exception is Count Two, which also alleges "harm [to] the communities and neighborhoods which Plaintiffs serve." (Doc. 1-1 at 306; *accord id*. at 307). This allegation plainly was included to satisfy Section 6-5-121, which limits a public nuisance to a nuisance that damages all persons within its sphere of influence. The allegation thus goes to the defendants' liability to the plaintiffs and does not remotely

11

299, 301, 304-05, 306-08, 310, 316, 317, 323-24). Moreover, the damages sought are for injuries only the plaintiff hospitals – not their patients – have experienced.[12] Indeed, the complaint explicitly disavows any demand for "damages which may have been suffered by individual citizens." (*Id*. at 297).

Kroger ignores these allegations and their plain elimination of representative status. It cites instead to portions of the complaint that simply set the table by describing the extent of the opioid crisis and how it resulted in the uncompensated treatment costs and other damages for which the plaintiffs seek redress.[13] These citations do not in any degree support Kroger's position that the plaintiffs have brought a representative action.

Unable to cite any passage of the complaint supporting its position, Kroger reasons that this must be a representative action because the plaintiffs' injuries "derive only as a result of its residents' alleged injuries and thus cannot be separated from the injuries that it alleges its residents have incurred." (Doc. 1 at 21). Kroger cites no authority for the remarkable proposition that, if X is injured

---

support the proposition that the plaintiffs seek damages on behalf of any person or entity other than themselves.

[12] The primary element of damage is "massive costs by providing uncompensated care as a result of opioid-related conditions." (Doc. 1-1 at 304-05; *accord id*. at 307-08, 309, 317). Other asserted elements of damage are the cost of special programs to deal with the opioid crisis and the diversion of the plaintiffs' finite resources (financial and otherwise) from other health care concerns. (*Id*. at 306, 316, 323). The "financial burdens on hospitals" imposed by the opioid crisis are described in detail elsewhere in the complaint. (*Id*. at 280-81, 297-98).

[13] Kroger relies on these innocuous passages:
- "Opioid abuse has quickly become one of the nation's most pressing health management issues, not only because of its toll on patients, but increasingly because of the financial impact on hospitals and the rest of the healthcare system." (Doc. 1-1 at 25).
- The defendants' misrepresentations misled "doctors, patients, and payors about the risks and benefits of opioids." (*Id*. at 78).
- The unlawful diversion of prescription opioids has caused "social and financial costs borne by, among others, individuals, families and hospitals." (*Id*. at 232).

only because Y was first injured, then if X sues for damages to X it necessarily is also suing for damages to Y.  Under Kroger's argument, a third-party beneficiary that sues on a breached contract necessarily sues for damages to the non-breaching party, and a motorist that sues the driver who knocked a third party's car into hers necessarily sues for damages to the third party.  The Court declines to find subject matter jurisdiction based on such an unorthodox, unsupported theory.

Although the plaintiffs address it, (Doc. 7 at 17), Kroger does not invoke Section 1332(d)(11)(A) or assert that this is a "mass action" capable of constituting a "class action" despite its non-representative nature.  Nor could it successfully do so, since there are only 18 plaintiffs and there has been no proposal to try jointly the claims of 100 or more persons.

In sum, this is not a "class action" within the contemplation of Section 1332(d), and the Court therefore lacks subject matter jurisdiction under CAFA.

### CONCLUSION

For the reasons set forth above,[14] Kroger's motion to stay is **denied**, and the plaintiffs' motion to remand is **granted**.  This action is **remanded** to the Circuit Court of Conecuh County.

DONE and ORDERED this 2nd day of December, 2019.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[14] Because it lacks subject matter jurisdiction, the Court declines to consider the plaintiffs' argument that removal is procedurally flawed for want of unanimous consent.

13